Harold O. McLAIN, Executor of the Last Will and Testament of Albert O. McLain, deceased, Plaintiff,

v.

John T. JARECKI, Individually and as Collector of Internal Revenue for the First Collection District of Illinois, Defendant.

No. 50 C 450.

United States District Court, N. D. Illinois, E. D.

Jan. 7, 1955.

See, also, D.C., 107 F.Supp. 148.

Hopkins, Sutter, Halls, DeWolfe & Owen, Chicago, Ill., for plaintiff.

Robert Tieken, U.S. Atty. for Northern District of Illinois, Chicago, Ill., for defendant.

CAMPBELL, District Judge.

This is a suit to recover federal estate taxes which the plaintiff alleges were erroneously assessed and collected. The taxes were levied upon the corpus of a trust created, at least nominally, by the decedent's wife, Minnie A. McLain. The sole question of law presented is whether that trust, and a substantially similar trust created at the same time by the decedent, are "reciprocal" or "crossed" trusts within the doctrine first announced in Lehman v. Commissioner, 2 Cir., 1940, 109 F.2d 99, so that the trust created by Minnie A. McLain might be included in the decedent's gross estate for tax purposes. The parties filed a stipulation which embraces all of the relevant facts; the following stipulated facts are hereby adopted as Findings of Fact under the provisions of Federal Rules of Civil Procedure, rule 52(a), 28 U.S.C.A.:

1. Albert O. McLain, hereinafter referred to as the decedent, died on May 29, 1947, leaving a last will and testament and codicil thereto which were duly admitted to probate in and by the Probate Court of Lake County, Illinois, on July 7, 1949; letters testamentary were issued to the plaintiff, Harold O. McLain, as executor of the will of the decedent. Plaintiff resides in Highland Park, Illinois, within the jurisdiction of this court. At the time this suit was filed, the defendant was Collector of Internal Revenue for the First Collection District of Illinois, within the jurisdiction of this court. (Stip., Pars. 1 and 2; Ex. A and B.)

2. Plaintiff's claim is for the recovery of $60,000 of federal estate taxes paid by plaintiff on behalf of the estate of the decedent, and collected by defendant, together with interest as provided by law. Plaintiff is the sole and absolute owner of said claim and has made no assignment of said claim or any part thereof; and no other suit or process by plaintiff or any assignee is pending against any other person or against the United States of America for or in respect of said claim. No part of said $60,000 nor any interest thereon has been refunded to plaintiff or credited to any tax deficiency of plaintiff. (Stip., Par. 3.)

3. On December 27, 1934, the decedent created the Dorothy McLain Cole Trust, hereinafter referred to as the Dorothy Trust, and transferred to the trustees named therein certain property. On December 18, 1935, the Dorothy Trust was amended. The property transferred by the decedent to the Dorothy Trust was his property at the date of the transfer. Dorothy McLain Cole is the daughter of the decedent and Minnie A. McLain. (Stip., Par. 4, Ex. C and D.)

4. On December 27, 1934, Minnie A. McLain, wife of the decedent, created the Harold O. McLain Trust, hereinafter referred to as the Harold Trust, and transferred to the trustees named therein certain property. On December 18, 1935, the Harold Trust was amended. The property transferred by Minnie A. McLain to the Harold Trust was her property at the date of the transfer. Harold O. McLain is the son of the decedent and Minnie A. McLain. (Stip., Par. 5, Ex. E and F.)

5. Under the provisions of the Dorothy Trust, the net income of the trust was to be accumulated and added to the principal of the trust until the death of the grantor (the decedent). Upon the death of the grantor, if Minnie A. McLain survived him, the net income of the trust was to be paid to her during her lifetime. After the death of the survivor of the grantor and Minnie A. McLain, the income was to be paid to Dorothy McLain Cole or to her issue. Under Article XI of the Dorothy Trust, it was provided that the trust could be revoked or modified during the lifetime of the grantor, and while either Minnie A. McLain or Harold O. McLain (their son) was living, by an instrument in writing signed by such of Minnie A. McLain, Harold O. McLain and Dorothy McLain Cole as were at the time living, and in the case of a modification, also by all persons affected thereby. By an amendment dated December 18, 1935, Article XI of the Dorothy Trust was modified so that thereafter Harold O. McLain and Minnie A. McLain were given the power to terminate the trust during the lifetime of Dorothy McLain Cole, or one or more of her issue, by an instrument in writing to that effect. Upon such termination, the trust estate would be distributed to Dorothy McLain Cole, if living, and if not, to her issue, *per stirpes*. (Stip., Ex. C and D.)

6. Under the provisions of the Harold Trust, the net income of the trust was to be accumulated and added to the principal of the trust until the death

of the grantor (Minnie A. McLain). Upon the death of the grantor, if her husband (the decedent) survived her, the net income of the trust was to be paid to him during his lifetime. After the death of the survivor of the grantor and her husband, the income was to be paid to the wife and issue of Harold O. McLain, their son. Under Article X of the Harold Trust, it was provided that the trust could be revoked or modified during the lifetime of the grantor, and while either her husband (the decedent) or Harold O. McLain was living, by an instrument in writing signed by such of her husband, Harold O. McLain and Dorothy McLain Cole as were at the time living, and in the case of a modification, also by all persons affected thereby. By an amendment dated December 18, 1935, Article X of the Harold Trust was modified so that thereafter the decedent and Dorothy McLain Cole were given the power to terminate the trust during the lifetime of Harold O. McLain, or one or more of his issue, by an instrument in writing to that effect. Upon such termination, the trust estate would be distributed to Harold O. McLain, if living, and if not, to his issue. (Stip., Ex. E and F.)

7. The decedent and his wife each filed a separate federal gift tax return for 1934, reporting as a gift made by him or her, respectively, his or her transfer of his or her property to the respective trust so established by him or her, and paid the gift taxes shown to be due by such return. (Stip., Par. 7.)

8. On December 20, 1941, Minnie A. McLain died and after that date under the terms of the Harold Trust the net income from the Harold Trust was paid to Albert O. McLain until his death on May 27, 1947. (Stip., Par. 9.)

9. On September 16, 1947, plaintiff filed the federal estate tax return for the estate of the decedent with defendant, and on August 27, 1948, plaintiff paid to the defendant the sum of $78,-682.09, the amount of federal estate tax shown to be due by said return, and on May 31, 1949, plaintiff paid to defendant

the further sum of $72,302.98, representing a deficiency in federal estate taxes assessed against the estate of the decedent, together with interest thereon in the amount of $3,224.91. No refund of any sort has been made of the amounts so paid. (Stip., Par. 10.)

10. In connection with the audit of the federal estate tax return filed for the estate of the decedent, and in computing the deficiency referred to in Finding 9, the Commissioner of Internal Revenue included in the assets of the gross estate of the decedent the value of the Harold Trust at the time of the death of the decedent.

The government contends, on the basis of the stipulated facts, that the Harold Trust is includable in the decedent's estate under the provisions of Section 811 of the Internal Revenue Code, 26 U.S.C. A. § 811, as property in which he had a contingent life interest, or as transferred property in which he retained power to alter, amend, or revoke. However, since the Harold Trust was created by a person other than the decedent, by a transfer of property not owned by the decedent, it cannot be taxable to the decedent's estate unless it was in fact one of two reciprocal trusts, as that term is defined by the cases which followed Lehman v. Commissioner, supra.

■ In the Lehman case, the decedent and his brother had owned equal shares in stocks and bonds which were held for them in certain bank accounts. The decedent agreed to transfer his share in trust for his brother and his brother's issue, in consideration of his brother's transfer of the other share in trust for the decedent and the decedent's issue. The two trust agreements were identical; each brother granted a life interest to the other, with remainder to the other's issue. Each life tenant had power to withdraw a large part of the principal, although the decedent never exercised his right of withdrawal. On these facts, the Court of Appeals for the Second Circuit held that that part of the trust created by the dece-dent's brother which the decedent had a right to withdraw was includable in the decedent's estate. (Under former Section 302(d) of the Act of 1926, the entire corpus was not taxable. Under present law, the entire corpus would be taxable.) This is the rationale of the Lehman opinion:

> "X transfers property in trust for himself for life, with power of revocation. Y goes about it in a slightly different way; he pays cash or transfers property to another who in consideration of the cash or property sets aside or transfers securities in trust for Y for life, with power in Y to terminate the trust and take the principal. Does anyone suppose that X's estate is taxable under section 302(d) but that Y's estate is not? Here the transfer by the decedent's brother, having been paid for and brought about by the decedent, was in substance a 'transfer' by the decedent, and the property so transferred formed part of his taxable estate by virtue of section 302(d), to the extent that the decedent had power 'to alter, amend or revoke' the enjoyment of it * * *." [109 F.2d 100.]

One significant point should be noted: under the Lehman decision, consideration is essential to a finding of reciprocity. The Court carefully noted that the transfer of the decedent's brother's property to a trust was in fact "paid for and brought about" by the decedent; and in the hypothetical case posed by the Court, "Y", the hypothetical decedent, "pays cash or transfers property to another". Subsequent decisions of the Court of Appeals for the Second Circuit indicate that such "consideration" may be inferred from the identical provisions of two trusts which are simultaneously executed. See, for example, Orvis v. Higgins, 2 Cir., 1950, 180 F.2d 537. However, the Court of Appeals for the Third Circuit, in two well-reasoned opinions, has taken another view. In re Lueders' Estate, 3 Cir., 1947, 164 F.2d 128; Newberry's

Estate v. Commissioner, 3 Cir., 1953, 201 F.2d 874. According to the latter Court, the Lehman doctrine demands that if some person other than the nominal settlor is to be treated as the actual settlor for tax purposes, he must have paid something of value to the nominal settlor. In the words of the Lehman case itself, he must have paid cash or transferred property to the nominal settlor of the trust. It is the opinion of this court that the Court of Appeals for the Third Circuit has adopted the most reasonable construction of the Lehman opinion, and the views of that Court, particularly as announced in Newberry's Estate v. Commissioner, supra, shall govern the disposition of this case.

It is not disputed that the decedent in this case paid nothing of value for the creation of the Harold Trust by his wife. The sole act performed by the decedent from which any inference of "consideration" might be drawn is the creation of an identical trust, the Dorothy Trust, for the benefit of his daughter. The Government contends that the court is free to infer a "promise for a promise," which, of course, is sufficient consideration to support the usual commercial transaction. Further, and this the court shall certainly infer, there was, on the part of both the decedent and his wife, a mutual desire to protect the future of their children. Is this sufficient consideration to label the trusts reciprocal, and bring the case within the Lehman doctrine? A cogent answer to the question was supplied by Judge Hastie in Newberry's Estate v. Commissioner, supra, 201 F.2d at page 878:

"Undoubtedly * * * domestic privacy and informality may effectively conceal understandings made and honored between husband and wife at variance with the formal and apparent aspects of family financial transactions. A bargain and exchange, within the meaning of the Lehman doctrine may exist, yet be unprovable. Moreover, regardless of any such bargain, there may be policy considerations favorable to legislation which for particular tax purposes would treat these crossed trusts of spouses like a single joint transaction with both spouses pro tanto transferors of the property over which each will thereafter have certain control. But, absent such legislation, when on the facts the conclusion is inescapable that each spouse by a distinct and bona fide transaction has dispensed of his own separate estate in accordance with his own personal desires and without receiving a quid pro quo from the other, we think a court cannot justifiably refuse to recognize each spouse as the real transferor of the trust he has formally created."

Since, in the instant case, the stipulated facts are barren of any reference to any consideration, the court concludes, as a matter of law, that the two trusts created simultaneously by the decedent and his wife are not reciprocal trusts within the doctrine first announced in Lehman v. Commissioner, and that the trust created by the decedent's wife, herein called the Harold Trust, is not properly includable in the decedent's gross estate for tax purposes.

One other matter remains for disposition. The plaintiff claims to have incurred certain administration expenses, including executor's and attorney's fees and the expenses of this proceeding, which have not been allowed by the defendant as deductions in the determination of the decedent's net estate. The parties agreed (Stip., Par. 12) to reserve this matter for presentation to the court after a decision on the merits of the main claim. Counsel for the plaintiff and for the Government are now ordered to confer within thirty days hereof on the manner in which proof of the remaining matter may be submitted to the court. After such proof has been submitted, and the remaining matter decided, final judgment will enter in accordance with the conclusions expressed in this memorandum.